United States District Court
Southern District of Texas
**ENTERED**
January 20, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| James CIARROCCHI., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-03943 |
| | § | |
| INPEX Americas, Inc., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendant INPEX Americas, Inc.'s ("Defendant" or "INPEX") Motion for Summary Judgment. (Doc. No. 21). Plaintiff James Ciarrocchi ("Plaintiff" or "Ciarrocchi") filed a Response in Opposition (Doc. No. 26), and INPEX filed a Reply in Support. (Doc. No. 28). After reviewing the motions and the law, the Court **GRANTS** INPEX's Motion for Summary Judgment. (Doc. No. 21).

### I. Background

This is an employment discrimination case. INPEX is an oil and gas exploration and production company. Plaintiff provided contract marketing and due-diligence services for INPEX.

Prior to this venture, Plaintiff performed similar services for INPEX Corp.—a Japan-based oil and gas exploration and production company that is not a party to the lawsuit. Defendant is a subsidiary of INPEX Corp. Ciarrocchi originally began working for INPEX Corp. in 2013, when the corporation first started to expand its operations to the United States and needed help establishing relationships with potential buyers of oil and gas generated from its mineral interests in oilfields off the Gulf of Mexico. From 2013 through 2018 Ciarrocchi performed services for INPEX Corp., which included facilitating negotiations of oil and gas purchase agreements.

1

In 2018, INPEX Corp. transitioned management of its Houston, Texas office to INPEX, a subsidiary of INPEX Corp. that managed the assets based in the United States. In 2011, Ciarrocchi formed Methanteno LLC ("Methanteno") with a partner, Flaming Zhou ("Zhou"). Within two years of its formation, Zhou stopped being a member, leaving Ciarrocchi as the sole member. After Zhou's departure Methanteno was a sole proprietorship until it became a subchapter S-Corp in approximately 2018.

On January 1, 2019, INPEX, instead of hiring Ciarrocchi, at his insistence entered into an Advisory Services Agreement (the "Agreement") with Methanteno. Under the Agreement, Methanteno was to act as a sales representative of INPEX, provide INPEX with necessary information for its analysis of the U.S. gas market, support oil and gas marketing work performed by INPEX, and provide 16 hours per month of office work for the Vice President, Unconventional Project. (Doc. No. 21-1 at INPEX-000119). Under the contract the work was to be performed by Ciarrocchi. He was referred to in the contract as the "Advisor." (Doc. No. 21-1 at ¶ 2.2).

In February 2019, INPEX acquired certain mineral interests owned by GulfTex Energy ("GulfTex") in the Eagle Ford Shale play in South Texas. INPEX and GulfTex signed a transition services agreement, in which GulfTex would assist in transitioning the day-to-day business operations to INPEX, and Ciarrocchi helped with the transition. This role involved him spending time at the GulfTex office in San Antonio. In June 2019, INPEX received a complaint from GulfTex containing allegations of unprofessional and unethical conduct by Ciarrocchi.[1] GulfTex refused to work with Ciarrocchi further. (Doc. No. 21-7, Ex. B). A few weeks later, INPEX terminated its agreement with Methanteno by providing the 30-day notice as required under the Agreement.

---

[1] Allegedly, this conduct included bribery, racism, solicitation of prostitutes, viewing and sharing pornography and explicit text messages, and generally being rude and unpleasant to several buyers. (Doc. No. 21-7, Ex. A, at 3).

Ciarrocchi sued INPEX for discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). INPEX denied these claims and subsequently filed a Motion for Summary Judgment, arguing Ciarrocchi is unable to bring an ADEA claim because he was an independent contractor and not an employee. In the alternative, INPEX contends Ciarrocchi cannot create a genuine issue of material fact that his relationship with INPEX was terminated because of his age or in retaliation for any protected conduct. Ciarrocchi responds that he was, in fact, an employee of INPEX, and thus, is able to bring his age discrimination claim. He further argues he "can establish a *prima facie* case of *age discrimination* and offer sufficient evidence of pretext to create a material face dispute that requires a trial to resolve." (Doc. No. 26 at 3). Importantly, in his Response, Ciarrocchi "concede[d] and waive[d] argument with respect to [his] ADEA retaliation claims." (Doc. No. 26 at 4). For that reason, the Court **GRANTS** the Motion for Summary Judgment as to the retaliation claim.

In this Order the Court will address the remaining to issues: (1) whether Ciarrocchi was an independent contractor as a matter of law; and (2) if not, whether Ciarrocchi presents sufficient evidence of age discrimination to survive INPEX's Motion for Summary Judgment.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant

3

then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

### III. Analysis

Defendant's Motion presents two questions to the Court: (1) was Ciarrocchi entitled to the protections of the ADEA as an employee, and (2) if an employee, did Ciarrocchi present evidence to create a genuine issue of material fact that INPEX terminated Ciarrocchi because of his age? The Court will address the two arguments in turn.

### A. Was Ciarrocchi an Employee or Independent Contractor?

The ADEA makes it unlawful for an "***employer***" to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623 (emphasis added). Consequently, to recover under the ADEA, the plaintiff must be an employee, not an independent contractor. *See Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 753 (5th Cir. 1983); *see Coleman v. New Orleans & Baton Rouge S.S. Pilots' Ass'n*, 437 F.3d 471, 477 (5th Cir. 2006).

The Fifth Circuit has long held that courts are to use a hybrid economic realities/common law control test to determine whether an employer-employee relationship exists. *See Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 118–19 (5th Cir.1993). The control part of the test,

however, is "the most important component." *Id.* at 119. The common law control test examines

six factors. *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 451 (2003) (a

non-ADEA case). *Coleman*, 437 F.3d at 481 (applying the same test in the ADEA context). While

no one factor is dispositive, courts examine the control element based on the following factors:

> (1) whether the organization can hire or fire the individual or set the rules and
> regulations of the individual's work; (2) whether and, if so, to what extent the
> organization supervises the individual's work; (3) whether the individual reports to
> someone higher in the organization; (4) whether and, if so, to what extent the
> individual is able to influence the organization; (5) whether the parties intended that
> the individual be an employee, as expressed in written agreements or contracts; and
> (6) whether the individual shares in the profits, losses, and liabilities of the
> organization.

*Clackamas Gastroenterology Associates, P.C.*, 538 U.S. at 451.

The remainder of the hybrid test—the economic realities portion—considers whether the

plaintiff, "as a matter of economic reality, [is] dependent on the business to which [he] render[s]

service." *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013). This test

examines the following factors:

> (1) the kind of occupation, with reference to whether the work usually is done under
> the direction of a supervisor or is done by a specialist without supervision; (2) the
> skill required in the particular occupation; (3) whether the "employer" or the
> individual in question furnishes the equipment used and the place of work; (4) the
> length of time during which the individual has worked; (5) the method of payment,
> whether by time or by the job; (6) the manner in which the work relationship is
> terminated [,] i.e., by one or both parties, with or without notice and explanation;
> (7) whether annual leave is afforded; (8) whether the work is an integral part of the
> business of the "employer"[,] (9) whether the worker accumulates retirement
> benefits; (10) whether the "employer" pays social security taxes; and (11) the
> intention of the parties.

*Junio*, 717 F.3d at 434-5 (citations omitted); *see also, Broussard v. L.H. Bossier, Inc.*, 789 F.2d

1158, 1160 (5th Cir. 1986) (citing *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C.Cir.1979))

(detailing the factors that the Fifth Circuit has recognized as relevant to determining employee

status). In deciding whether Ciarrocchi was an employee of INPEX, the Court will take both tests into account.

### i. Common Law Control Test

INPEX argues the control portion of the test "conclusively establish[es] that Mr. Ciarrocchi was an independent contractor." (Doc. No. 21 at 14). Ciarrocchi contests that conclusion, stating the evidence supporting the control part of the test, "weigh[s] in favor of Ciarrocchi being considered an employee." (Doc. No. 26 at 9). The Court will address each of the six common law control test factors.

*Factor One: Power to Hire, Fire, and Set Rules*

Defendant, supported by the Agreement between Methanteno and INPEX, contend that INPEX could not hire or fire Ciarrocchi nor could it set the rules and regulations of his work. Defendant points to various provisions in the Agreement as support. The Agreement expressly provides that: (1) Ciarrocchi was "an employee of [Methanteno], not INPEX;" (2) "the services will be subject to [Ciarrocchi's] availability;" (3) Ciarrocchi "will not be committed full time to provide Services for INPEX;" and (4) "Work Location of [Ciarrocchi] shall be at the discretion of [Methanteno]." (Doc. No. 21-1 at INPEX-000113 at ¶¶ 2.2, 2.4, 6.1). Further, INPEX did not set rules for Ciarrocchi. As an example, Defendant points to Ryohei Namekata, Vice President of INPEX's Strategic Planning Division, declaration. In his declaration, Namekata describes an instance where Ciarrocchi refused to follow INPEX rules and that Ciarrocchi claimed he did not have to since "he was not an INPEX employee bound by its policies." (Doc. No. 21-2 at ¶ 13).

Plaintiff responds, raising several arguments. Plaintiff argues that "as a practical matter, Ciarrocchi was, for all intents and purposes, Methanteno, and vice versa." (Doc. No. 26 at 11). Additionally, he contends that the contract specifically refers to Ciarrocchi as the advisor, that

Ciarrocchi signed the Agreement, and that termination of the contract with Methanteno would lead to the termination of services provided by Ciarrocchi. (*See* Doc. No. 21-1 at INPEX-0001138). Finally, he states "[t]he fact that a shell intermediary exists in this contractual relationship does not substantively limit INPEX's ability to terminate Ciarrocchi." (Doc. No. 26 at 11). The Court does not find any of these arguments persuasive. First, these are arguments or conclusions, not facts. Second, Plaintiff was free to contract on behalf of himself instead of Methanteno, but he deliberately chose not to do so for tax purposes. (Doc. No. 26-2 at 118:14-20).[2] Lastly, under Ciarrocchi's signature on the Agreement is his title "Managing Member… Methanteno, LLC." (Doc. No. 21-1, Ex. 17 at INPEX-000118). Therefore, he clearly signed the agreement on behalf of the LLC, not individually. In effect, Ciarrocchi wants this Court to pierce the very corporate veil he created.

In sum, the Agreement clearly provides Ciarrocchi worked for Methanteno, not INPEX. Therefore, Methanteno had the power to hire, fire, and set the rules that governed Ciarrocchi's conduct, not INPEX. Thus, the Court finds this factor favors Plaintiff being classified independent contractor.

*Factors Two and Three: Supervising Work and Reporting to Someone Higher*

Plaintiff contends Ciarrocchi was extensively supervised as he performed work. (Doc. No. 26 at 9). As evidence, Ciarrocchi cites to his own deposition in which he discusses how he was responsible for locating buyers and negotiating oil and gas contracts related to the Lucius project. (Doc. No. 26-2 at 101:22-104:1). He further discusses in his deposition how he did not have the power to enter into contracts on his own. Rather, he was required to give any contract to Misami

---

[2] In his deposition, Ciarrocchi testified, "[t]he actual transaction occurred from INPEX through Methanteno to me. That is how it worked. Methanteno was kind of a tax situation that was set up to pay me. Methanteno was a tax thing. The money came from INPEX. I own the company, Methanteno. I do pay the unemployment taxes into it." (Doc. No. 26-2 at 118:14-20)

Mitani, who would in turn take it to Tokyo oil marketing to get it finalized, and at "some point Tahara got involved". (Doc. No. 26-2 at 112:13-19). Plaintiff also points out that Ryo Manabe ("Manabe"), the current President of INPEX, confirmed in his deposition that Ciarrocchi was supervised by Naofumi Tahara, an administration manager, and Namekata. (Doc. No. 26-7 at 35:8-13).[3]

Defendant, on the other hand, argues INPEX employees oversaw his projects generally, but no one at INPEX reviewed or managed his day-to-day activities. (Doc. No. 21 at 11). This assertion is not supported by competent summary judgment evidence. Therefore, the Court finds factors two and three weakly favor an employer-employee relationship.

*Factor Four: Individual's Influences on the Organization*

Defendant did not list this as a required factor, despite the case law, nor did they brief this factor. Plaintiff, however, also ignored this factor. Since there is no evidence of this factor, the factor weighs neutral—neither in favor nor against employee status.

*Factor Five: Whether Parties Intended the Individual be an Employee*

INPEX argues that the Agreement "establishes the parties' intention that Mr. Ciarrocchi was an independent contractor." (Doc. No. 21 at 11). Plaintiff did not respond to this argument, did not brief this factor, and did not present any evidence to the contrary.

---

[3] In its Reply, Defendant argues Plaintiff misconstrues Manabe's deposition (Doc. No. 28 at 1); however, Manabe clearly expressed his opinion that Ciarrocchi was, in fact, supervised. The following exchange occurred during the deposition:

> Question: During your employment with INPEX Americas, did you ever work closely with Mr. Ciarrocchi?
> Answer: I have not given direct instructions to him. I believe I am -- somebody in between was doing so.
> Question: So you were never Mr. Ciarrocchi's direct supervisor at any point in time?
> Answer: I think so.
> Question: Do you recall who was or were the supervisors of Mr. Ciarrocchi?
> Answer: Concerning to Lucius business, Mr. Tahara was, T-a-h-a-r-a. As for Eagle Ford's business, Mr. Namekata, N-a-m-e-k-a-t-a.

(Doc. No. 26-7 at 35:1-13).

Rather, the evidence clearly expresses an intent for Methanteno to be treated as an independent contractor. The written Agreement clearly states, "INPEX desires to engage [Methanteno] as an independent contractor." (Doc. No. 21-1, Ex. 17 at INPEX-000111). Further, the Agreement provides, "Ciarrocchi is assigned to be a person in charge of rendering Services as an employee of Company (Methanteno), not INPEX." (Doc. No. 21-1, Ex. 17 at INPEX-000111 ¶ 2.2). Examining the language in the written Agreement, it is clear the parties intended Methanteno be an independent contractor, not an employee and that Plaintiff worked for it, not the Defendant. *See Craft-Palmer v. State Farm Ins. Co.*, 157 F.3d 903, 1998 WL 612388 at *1 (5th Cir. 1998) (holding a contract's identification of an individual as an independent contractor-and not employee-is evidence of the individual's status as an independent contractor).

Thus, this factor clearly favors an independent contractor relationship.

### *Factor Six: Sharing in Profits, Losses, and Liabilities*

Defendant argues that under the Agreement, Ciarrocchi was not able to share in the profits, losses, or liabilities of INPEX. Citing to the Agreement, INPEX points out that it paid Ciarrocchi a set hourly rate for all work performed and that he was guaranteed a minimum monthly payment. (Doc. No. 21-1, Ex. 17 at INPEX-000119). Thus, he did not share in INPEX's profits. Plaintiff did not contest this factor, nor did he present evidence that he shared in the losses and liabilities of INPEX. For that reason, the Court finds that this factor suggests Plaintiff was an independent contractor.

Taking into account the totality of the evidence, the Court finds that the control test weighs in favor of Ciarrocchi being classified as an independent contractor instead of an employee. While individuals at INPEX may have to some extent supervised Ciarrocchi's work, the parties clearly intended Methanteno (and Ciarrocchi) be treated as an independent contractor. *See Haskett v.*

9

*Percheron*, LLC, No. CV G-14-257, 2016 WL 1054396, at \*4 (S.D. Tex. Mar. 9, 2016) (finding a plaintiff was an independent contractor where the undisputed evidence reflected that he applied for the position as an independent contractor, held himself out as an "Independent Petroleum Landman" and a part of "Kinetic Energy Group, LLC," the contract clearly stated that position is that of an independent contractor, and the contract made individual free to provide services concurrently for other businesses).

### ii. Economic Realities Test

The Court now examines the eleven-factor economic realities test, which considers whether the plaintiff "as a matter of economic reality, [is] dependent on the business to which [he] render[s] service." *Juino*, 717 F.3d at 434. As with to the common law control test, the Court will examine each factor.

#### *Factor One: Kind of Occupation*

Factor one inquires about the plaintiff's kind of occupation, asking whether the work is usually done under the direction of a supervisor or is done by a specialist without supervision. Finding the job is usually performed by a specialist weighs in favor of finding the individual is an independent contractor.

Defendant claims, "[c]onsultants responsible for marketing and sales have consistently been held to be independent contractors." (Doc. No. 21 at 12). Plaintiff does not contend otherwise. The Fifth Circuit has not expressed an opinion of whether a "Marketing Supervisor" is included in the type of occupations usually done by a specialist, but, in his resume Ciarrocchi expressly holds himself as a specialist, "I am a commercial specialist." (Doc. No. 21-1, Ex. 1 at INPEX 000207). The evidence is clear, however, that Defendant sought out the services of Ciarrocchi to fill a void it had in its staff.

Considering the Plaintiff has offered no evidence to counter that offered by Defendant, the Court concludes that this factor slightly favors the Defendant.

*Factor 2: Skill*

Under factor two, the Court examines the skills required for the particular occupation. Concluding an individual is skilled weighs in favor of finding the person deserves independent contractor status.

INPEX argues that "[o]il and gas consulting requires oilfield-specific knowledge and skill." (Doc. No. 21 at 3). Specifically, it contends "Ciarrocchi's services required specific knowledge of the relevant markets and skill in developing relationships." (Doc. No. 21 at 13). (Doc. No. 21-1, Ex. 1 at INPEX 000207-09). Supporting its argument that Ciarrocchi possessed the required skills, INPEX directs the Court to Ciarrocchi's resume. As evidenced by his resume, Ciarrocchi has attended many graduate programs, specializing in topics such as petroleum accounting and energy economics. He also has spent numerus years providing consulting, marketing, and research services for various oil and gas organizations, and even received professional recognition for his work. Considering his extensive job history, his educational background, and his professional recognitions, it is clear that Ciarrocchi was highly skilled. More importantly, Defendant specifically contracted with Methanteno to obtain skills and expertise that it lacked internally. Plaintiff does not contest this. The Court also believes that these special skills were necessary to establish an effective marketing strategy and to locate potential buyers for oil and gas in the Gulf of Mexico market. Thus, the Court concludes that this factor weighs in favor of Ciarrocchi being an independent contractor.

11

### *Factor 3: Location of Work and Equipment Used*

Factor three concerns where the plaintiff worked and what equipment the plaintiff used. If the plaintiff works at the defendant's place of business and uses the defendant's equipment, then this factor weighs in favor of finding the plaintiff qualifies as an employee.

Neither party has argued, nor pointed to evidence, explaining where Ciarrocchi spent the majority of his time working, but it appears from the record that Ciarrocchi was not required to come into the Defendant's office.[4]  In fact, the Agreement provides that the "Work Location of [Ciarrocchi] shall be at the discretion of [Methanteno]." (Doc. No. 21-1, Ex. 17 at ¶ 6.1). Additionally, the Agreement states that "[f]or a particular task, INPEX may request [Ciarrocchi] to render Services in the office of INPEX," but Ciarrocchi had the choice to decline such requests. (Doc. No. 21-1, Ex. 17 at ¶ 6.2).[5] That said, there were projects that required Ciarrocchi be in the office. For example, when Ciarrocchi assisted in the transition of GulfTex assets to INPEX, those services "required Mr. Ciarrocchi to spend time at GulfTex's office in San Antonio." (Doc. No. 21-2 at ¶ 7). In those instances, the Agreement specifically required INPEX pay Defendant's travel expenses, so Plaintiff clearly was not a commuting employee. (*See* Doc. No. 21-1, Ex. 17 at ¶ 4.8).

As to the equipment, the Agreement expressly provides Methanteno "shall be responsible for all costs and expenses related to the Services required within 50 miles from the address of [Methanteno]." (Doc. No. 21-1 at INPEX-000113 at ¶ 4.7). Further, as Ryohei Namekata, Vice President of INPEX's Strategic Planning Division, explained in his declaration, "most of Mr. Ciarrocchi's work was done at his discretion on his own computer and phone, and using his own

---

[4] Per Komiya's deposition, he once saw Ciarrocchi in the office, attending to personal affairs during business hours, and he "asked Mr. Ciarrocchi what he had been doing at [INPEX's] office. [He] asked that question to him, underlying the fact is that he is a contractor. He does not have to come into the office to do such a thing." (Doc. No. 21-6 at 53:1-13).

[5] The Agreement states, "[f]or a particular task, INPEX may request [Ciarrocchi] to render Services in the office of INPEX…If {Ciarrocchi agrees to such request…" (Doc. No. 21-1, Ex. 17 at ¶ 6.2).

personal email account." (Doc. No. 21-2 at ¶ 7). Countering that evidence, Ciarrocchi argues that

he had a company e-mail address (*See* Doc. No. 26-2 at 140:14-16), an INPEX business card (Doc.

No. 26-5, Ex. 1), and the "***ability***" to use INPEX computers.

Even recognizing that some of the evidence might be conflicting, the Court finds that this

factor clearly weighs in favor of the Defendant.

### *Factor 4: Length of Time Worked*

Next, the Court will consider the length of time Ciarrocchi has worked for Defendant.

When considering this factor, courts not only look to the length of time worked but also consider

whether the plaintiff maintained other jobs at the same time. *See Broussard*, 789 F.2d at1160

("While it is apparent that the Broussards (plaintiffs) worked for at least a year for Bossier

(defendant), it was "off and on;" they also worked for nine other companies during this time").

Ciarrocchi worked for INPEX Corp. for several years. While he was working for INPEX

Corp., however, he had other jobs.[6] Ciarrocchi did not begin to work for Defendant until January

2019, and INPEX terminated the Agreement approximately eight months later. According to the

INPEX-Methanteno Agreement, it only needed to provide base work amounting to 16 hours of

Services per month. (Doc. No. 21-1, Ex. 17 at INPEX-000119). Moreover, while working for

INPEX, Methanteno (and the Plaintiff) was free to "services for third parties." (Doc. No. 21-1 at

INPEX-000113 at ¶ 5.5).

The Court concludes this factor weakly favors INPEX.

---

[6] For example, he worked for the Association for the Advancement of Mexican-Americas from the end of 2013 to the beginning of 2014. (Doc. No. 21-1 at 53:19-54:5). Ciarrocchi also worked for Mississippi Resource in 2013. (Doc. No. 21-1 at 55:9-25).  Additionally, he worked as an adjunct professor at Lone Star College, beginning in 2018. (Doc. No. 21-1 at 134:13-134:12).

*Factor 5: Method of Payment*

The fifth factor looks at whether the defendant pays the plaintiff by time or by the job. First and foremost, the Court notes that INPEX did not pay Ciarrocchi. (Doc. No. 21-1 at 12:4-13:11). Rather it paid Methanteno, Ciarrocchi's' LLC. (Doc. No. 21-1 at 12:4-13:11). Methanteno in turn would pay Ciarrocchi. (Doc. No. 21-1 at 12:4-13:11). Thus, it is clear that INPEX did not pay Ciarrocchi at all, which weighs in favor of independent contractor status. *Broussard*, 789 F.2d at 1160 ("With respect to the form of payment, Bossier (defendant) did not pay Broussard (plaintiff); it paid Ronney Broussard Trucking Company for time and services that the company provided.").

Additionally, the Court notes that under the terms of the Agreement Methanteno was paid an agreed fee in exchange for a set number of hours (16) per month, with any additional hours paid at a higher hourly fee. (Doc. No. 21-1, Ex. 17 at 10). This factor clearly favors the Defendant.

*Factor 6:  Manner in Which the Relationship is Terminated*

Factor six of the economic realities test questions the manner in which the relationship is terminated. When an individual is entitled to freely terminate the contract at will, that is indicative of independent contractor status. *Hernandez v. Combined Ins. Co. of Am.*, No. 02-20-00225-CV, 2021 WL 520456 (Tex. App. Feb. 11, 2021), *review denied* (July 2, 2021).

Defendant, citing to the Agreement, explains that the term was set for a period of one year with automatic renewal for another year unless either party terminated the Agreement. As written in the Agreement, the "Agreement [could] be terminated anytime by either Party [INPEX and Methanteno] giving thirty (30) days prior written notice to the other Party." (Doc. No. 21-1 at INPEX-000119). Despite the requirement of notice, this was effectively an at-will contract. This factor weighs in favor of independent contractor status.

*Factor 7, 9, and 10: Benefits*

Factors seven, nine, and ten take into consideration the benefits the plaintiff receives from the "employer", whether the "employer" pays social security taxes, and whether annual leave is afforded. Here, Plaintiff concedes that "[i]t is undisputed that Ciarrocchi handled his own retirement benefits and social security taxes and that INPEX did not provide Ciarrocchi with annual leave." (Doc. No. 26 at 12). For that reason, all three of these factors weigh in favor of independent contractor status. *In re Pilgrim's Pride Corp.*, 453 B.R. 684, 688 (N.D. Tex. 2011) (court concluded that no employment relationship existed where defendant did not withhold taxes on the plaintiff's behalf, did not provide the plaintiff with health insurance, employment benefits, or any other form of benefits); *Branch v. CEMEX, Inc.*, No. CIV.A. H-11-1953, 2012 WL 2357280, at *14 (S.D. Tex. June 20, 2012), aff'd, 517 F. App'x 276 (5th Cir. 2013) ("CEMEX did not pay Branch benefits under the Agreement… Nor did CEMEX withhold taxes when paying him…This evidence appears to weigh in favor of independent-contractor status.").

*Factor 8: Integral Part of "Employer's" Business*

The eighth factor asks whether the work plaintiff performs is an integral part of the business of the "employer."

INPEX contends "Ciarrocchi's service was not an integral part of INPEX's business." (Doc. No. 21 at 15). Conversely, Ciarrocchi maintains that his "duties were absolutely related to the core business of INPEX." (Doc. No. 26 at 12). The parties do not dispute that Ciarrocchi provided "due diligence services relating to the Eagle Ford Shale play, such as researching potential seller of Eagle Ford shale assets." (Doc. No. 21-2 ¶ 5). As the INPEX president himself admitted, the Eagle Ford Shale project was "part of the core assets of the INPEX Americas." (See Doc. No. 21-7 at 22:17-23:16).  Further, once INPEX located a potential seller, it is undisputed

that Ciarrocchi helped with closing the Eagle Ford transaction, and ultimately, assisted with the company's transition. (Doc. No. 21-2 ¶ 7).

The Court, therefore, concludes that Ciarrocchi's services were an integral part of INPEX's business, and finds this factor weighs in favor of employee status.

### *Factor 11: Parties' Intentions*

The final factor considers the parties' intentions. As discussed, the Agreement expressly states," INPEX desires to engage [Methanteno] as an independent contractor." (Doc. No. 21-1, Ex. 17 at INPEX-000111). This evidences an intent to have Methanteno (and through Methanteno, Ciarrocchi) be treated as an independent contractor. Thus, the final element weighs in favor of classifying Ciarrocchi as an independent contractor.

In sum, ten of the economic reality test factors weigh in favor of independent contractor status while only one weighs towards employee status. Considering this in conjunction with the conclusion that the common law control test weighs in favor of independent contractor status, the Court finds, as a matter of law, that Ciarrocchi is not INPEX's employee under the ADEA. This finding alone is dispositive, but the Court will address INPEX's second argument: that Ciarrocchi cannot present evidence to create a genuine issue of material fact that INPEX terminated Ciarrocchi because of his age.

### **B. Did INPEX terminate Ciarrocchi because of his age?**

As mentioned, Ciarrocchi alleges in his Complaint that INPEX engaged in acts that are unlawful under the ADEA. Under the ADEA, it is unlawful for an "employer" to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623. A party can establish discrimination under the ADEA through either direct or circumstantial

evidence. Where, as in this case, the plaintiff's case is built upon circumstantial evidence[7] a Court relies on the *McDonnell Douglas* burden-shifting framework for its analysis. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In *McDonnell Douglas*, the Supreme Court outlined a three-part framework to analyze a discrimination claim. First, the plaintiff must establish a *prima facie* case of discrimination. *Id.* If the plaintiff does so, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the employer provides a legitimate, nondiscriminatory reason for the employee's rejection, the burden shifts back to the plaintiff to prove that the employer's reason was pretext for discrimination. *Id.* at 804–05.

The Court will evaluate each part in turn, beginning with Ciarrocchi's prima facie case of discrimination.

### i. Prima Facie Case

The *McDonnell Douglas* framework first requires Moreno to establish a *prima facie* case of discrimination. Under the ADEA, a plaintiff must show: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022). Defendant challenges Plaintiff's ability to "create a genuine issue of material fact that he was replaced by someone younger or treated less favorably than a younger employee." (Doc. No. 21 at 18).

---

[7] In his Response, Ciarrocchi writes that he, "intends to establish his case of age discrimination via circumstantial evidence." (Doc. No. 26 at 13).

Defendant contends that Ciarrocchi was not replaced. Rather, it contends that Ciarrocchi's old consultant position "was eliminated because there was no longer a need for the limited marketing services that Mr. Ciarrocchi provided," and the "remaining services could be done in-house." (Doc. No. 21 at 18, 20). On the other hand, Plaintiff argues Marshall Burke ("Burke"), an allegedly younger fellow, was hired to fill his position. Defendant combats Plaintiff's assertion, explaining that Burke's position was first envisioned in May 2019, when Ciarrocchi was still performing services for INPEX, and thus, Burke did not replace Ciarrocchi. (Doc. No. 21-2 at 4).

In support of its contention that Burke did replace Ciarrocchi, Ciarrocchi points out the timing of the events. In particular, as evidenced by email, INPEX gave Ciarrocchi the required 30-day notice that it was terminating the Agreement on July 29, 2019. (Doc. No. 26-8). Less than two weeks later, INPEX posted a job advertisement on LinkedIn for a "Senior Commercial Marketing Specialist." (Doc. No. 26-10).

As it turns out, the LinkedIn job advertisement shares many similarities with the job description Ciarrocchi was provided with when he applied for the job with INPEX Corp. in 2013. As Ciarrocchi argues, the "LinkedIn job posting is substantially similar to the job posting Ciarrocchi answered when he originally began working with INPEX's parent" company, INPEX Corp. (Doc. No. 26 at 15). While the two postings have different job titles[8] and are for two different companies,[9] it is indisputable that the job summary and the qualification and skill requirements share many similarities. (*See* Doc. Nos. 26-4 and 26-10).[10] In fact, at least four of the job requirements on the two postings use the exact same language.

---

[8] The 2013 job title was "Crude Oil Marketing Supervisor." (Doc. No. 26-4). The 2019 job title was "Senior Commercial Marketing Specialist." (Doc. No. 26-10).

[9] Neither party proposed a method of analysis to compare Ciarrocchi's 2013 position with INPEX Corp. to his 2019 position with INPEX.

[10] For example, the 2013 job summary includes "reporting to Marketing Manager and Oil Marketing Unit in Tokyo… [and] is accountable for establishing marketing strategy of Lucius and potential crude oil." (Doc. No. 26-4 at 1). Whereas the 2019 job summary states, "daily operation of marketing jobs for crude oil, gas and NGLs produced in

While the Court agrees that this evidence does meet Plaintiff's burden of showing he was replaced, there is no evidence he was "replaced by someone outside the protected class" or "replaced by someone younger." *Harris*, 27 F.4th at 1123. In its Response, Plaintiff states that "Burke is substantially younger than Ciarrocchi." (Doc. No. 26 at 14). Plaintiff, however, never provides proof of his age. Instead, as "evidence" Plaintiff compares Burke's dates of employment and educational history as exemplified on his LinkedIn Profile with the dates of his own Resume. The Court does not find this evidence persuasive summary judgment evidence for two reasons. First, the LinkedIn Profile (Doc. No. 26-9) is hearsay under the Federal Rule of Evidence 801. *See* Fed. R. Evid. 801. Second, the date one graduates college or how many years a person has worked is not necessarily indicative of their age. For example, quite recently a 90-year-old great-grandmother graduated from Northern Illinois University. Yin-Jin Yu, Great-grandmother graduates college at 90: 'Don't give up' (Jan. 19, 2023, 10:10 AM), https://abcnews.go.com/GMA/Living/great-grandmother-set-graduate-college-90-dont-give/story?id=94785900. That individual is a recent college graduate, but she is older than the Plaintiff.

Plaintiff filed a very narrow Response to Defendant's Motion for Summary Judgment. Since Plaintiff only discussed the prima facie case in terms of being replaced by Burke and since there is no competent summary judgment evidence of Burke's age, the Court concludes Plaintiff has not met his burden of showing he was replaced by someone outside the protected class or replaced by someone younger. Again, this ruling alone would be dispositive, but the Court will address the remaining *McDonnell Douglas* issues.

---

the company's assets in Eagle Ford play, Lucius filed in Gulf of Mexico, and any other assets may be additionally acquired." (Doc. No. 26-10 at 1).

### ii. Legitimate, Nondiscriminatory Reason

INPEX also argues that Ciarrocchi's claims must fail because "INPEX terminated the Agreement for legitimate, non-discriminatory reasons." (Doc. No. 21 at 18). "An employer may avoid liability for . . . discrimination . . . by producing evidence tending to show that it had a legitimate, nondiscriminatory reason for its disputed decision." *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).

INPEX primarily contends that its legitimate, nondiscriminatory reason for terminating the Agreement was that Ciarrocchi's services were "no longer needed." (Doc. No. 21 at 18). In particular, INPEX no longer needed Ciarrocchi's services because it had cultivated its own knowledge of buyer for its Gulf of Mexico assets, it had acquired knowledge of the oil and gas market in the Eagle Ford Shale area, Ciarrocchi charged "excessive fees", and, lastly, GulfTex complained and refused to work with Ciarrocchi, making it clear that he was a risk to INPEX's reputation. (*See* Doc. No. 20).

INPEX support its conclusion by referencing Masateru Komiya's ("Komiya") deposition. Komiya is the Vice President and Secretary for INPEX. In his deposition Komiya states that he lost her confidence in Ciarrocchi by May 2019 because he "[had] not been satisfied with he way he provided services for. And I have been looking at his performance for a year and a half, since I came to Houston, and I determined that his performance is not there relative to what he's paid. So, therefore, looking at his performance, I reached the conclusion that he's not necessary any longer." (Doc. No. 21-6 at 57:6-22). Namekata, who works as the Vice President of INPEX's Strategic Planning Division, also expressed in his declaration that he "had developed serious concerns about

20

[Ciarrocchi's] productivity and professionalism... Mr. Ciarrocchi disdained Mr. Komiya and called him derogatory names in my presence on numerous occasions." (Doc, No. 21-2 at 4). Additionally, Namekata shares that he "observed several instances when Mr. Ciarrocchi spent time for which he charged INPEX attending to personal matters such as planning vacations, checking his personal investments, or discussing romantic relationships.' (Doc. No. 21-2 at 4-5).

Finally, the Chief Counsel of INPEX, Trevor Hall, discusses in his declaration that GulfTex declared Ciarrocchi to be a *persona non grata*, explaining that "Ciarrocchi ha[d] been disruptive to the GulfTex environment and/or to the Code of Ethics" and was "not to be in any GulfTex Office, or to make any contact of any kind to any GulfTex Employee." (Doc. No. 21-8, Ex. D). As per Hall's declaration, "in light of the complaint and the Persona Non Grata notice, [he] recommended... that Mr. Ciarrocchi's work related to the Eagle Ford Shale acquisition be immediately suspended." (Doc. No. 21-8 at ¶ 7). He "further determined that because Mr. Ciarrocchi could in any event no longer assist in the transition of the Eagle Ford Shale assets— because GulfTex would no longer work with him and had banned him from its premises—there was no remaining business need for the services Mr. Ciarrocchi provided, which the Company already believed were overpriced for the value received." (Doc. No. 21-8 at ¶ 7). As Hall states, "[f]or these reasons, in late July 2019 Mr. Komiya, Dr. Manabe, and I decided to terminate the services contract with Methanteno, LLC." (Doc. No. 21-8 at ¶ 7).

On this element, it is clear that INPEX brought forth legitimate, nondiscriminatory reasons for terminating its business relationship with Methanteno. As such, the Court finds that the Defendant has met its burden on this element.

### iii. Pretext

In step three of the *McDonnell Douglas* analysis, Ciarrocchi must bring forth evidence to establish a genuine issue of material fact that Defendant's legitimate reason is a pretext. Defendant maintains that Ciarrocchi cannot meet his burden to demonstrate that INPEX's legitimate, non-discriminatory reasons for terminating the Agreement were pretextual. (Doc. No. 21 at 23).

Once the employer satisfies its burden of providing a legitimate, nondiscriminatory reason for the employment decision, "the burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age." *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 918 (5th Cir. 2015). An employee can show pretext through either evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence. Neither party offers much, if any, argument (and certainly no evidence) as to the disparate treatment alternative, so the Court will focus its analysis on the pretext alternative.

"A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 918 (5th Cir. 2015). The ADEA requires a showing of but-for causation. *Goudeau*, 793 F.3d at 474. If Ciarrocchi can "raise a genuine issue of material fact as to whether he has established pretext, that will suffice to avoid summary judgment." *Sullivan v. Worley Catastrophe Servs.*, L.L.C., 591 Fed. Appx. 243, 247 (5th Cir.2014) (per curiam) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir.1996)).

As previously discussed, Defendant offered several legitimate, nondiscriminatory reasons for terminating the Agreement. To survive summary judgment, Plaintiff must address each reason

22

and provide evidence that the alleged explanation is pretext. *See Harvey v. Stringer*, 113 F. App'x 629, 631 (5th Cir. 2004) (retaliation case where court affirmed district court's order granting finding plaintiff did not present sufficient evidence to create a fact issue regarding the falsity of defendant's reasons where defendant presented evidence of multiple, legitimate reasons for employee's termination, and, in response, employee failed to counter most of employer's proffered reason).

One of INPEX's proffered reasons was that it planned to move its marketing in-house. Ciarrocchi argues that at the time of termination, he was only provided one reason for termination, that was that INPEX elected to move its marketing operation in-house. (Doc. No. 26-8).[11] Ciarrocchi contends this alleged reason is merely pretext as evidenced by INPEX subsequently hiring Burke. It is undisputed that INPEX hired Burke in December 2019. Additionally, as mentioned, Burke's position and Ciarrocchi's old position shared many similarities. *See supra*. Moreover, Ryo Manabe ("Manabe"), the President of INPEX, stated in his deposition that to his knowledge, that Burke was an employee of INPEX. (*See* Doc. No. 26-7 at 26:9-11). This evidence supports INPEX's reasoning that it did, in fact, move its marketing operation in-house. According to the evidence cited by Plaintiff, Burke was hired as an employee to perform marketing and consulting services, as opposed to Plaintiff whose company was hired to perform such services. This evidence helps confirm INPEX's position; it is certainly not evidence of pretext. The Court believes that for summary judgment purposes, Ciarrocchi did not meet his burden of establishing Defendant's reason was pretextual. The Court, however, will also address the other legitimate, nondiscriminatory reasons Defendant proffered, and determine whether a fact issue exists as to the other reasons.

---

[11] The termination e-mail reads, "[a]s for business going forward, however, we have made the decision to move all of the marketing work in-house." (Doc. No. 26-8).

23

As discussed, another reason Defendant presented for termination the consulting contract was because of Ciarrocchi's conduct at GulfTex.[12] Ciarrocchi questions the legitimacy of this reason, citing to Hall's declaration and arguing, "Mr. Hall also cast doubt that the investigation instigated by GulfTex complaint was relevant to Plaintiff's Termination." (Doc. No. 26 at 15-16). Examining Hall's declaration, he clearly does not cast any doubt on whether the complaint was relevant. In fact, he states the opposite: "those events played a significant role in the Company's decision to terminate the contract, although they were not the only factors." (Doc. No. 21-8 at ¶ 9). Plaintiff presents no contrary evidence. Thus, Ciarrocchi failed to create a genuine issue of material fact as to whether the reason concerning terminating him because of the GulfTex Complaint was a pretext.

Finally, INPEX expressed it had concerns with Ciarrocchi's productivity, professionalism, and cost. In its Response, Ciarrocchi again failed to address any of these reasons, much less provide any competent summary judgment evidence that the reasons were pretext. For that reason, Ciarrocchi failed to meet its burden of creating a genuine issue of material fact regarding the falsity of defendant's legitimate, nondiscriminatory reasons.

## IV. Conclusion

For all of the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. No. 21). It finds as a matter of law that Plaintiff was an independent contractor, and thus, is unable to bring a ADEA claim. It also finds that, had he been an employee, Plaintiff

---

[12] "[B]ecause GulfTex would no longer work with him and had banned him from its premises—there was no remaining business need for the services Mr. Ciarrocchi provided, which the Company already believed were overpriced for the value received." (Doc. No. 21-8 at ¶ 7).

24

has not brought forth sufficient summary judgment evidence to raise an issue of material fact with regard to a possible ADEA claim.

Signed at Houston, Texas, this ___20th___ day of January, 2023.

Andrew S. Hanen
United States District Judge